Keith LUTZ, Appellant

v.

TANGLWOOD LAKES COMMUNITY
ASSOCIATION, INC.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2004.
Decided Jan. 12, 2005.

Tammy Lee Clause, Newfoundland, for appellant.

Andrew W. Bonekemper, Philadelphia, for appellee.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

## OPINION BY Judge LEAVITT.

Keith Lutz (Lutz) appeals from an order of the Court of Common Pleas of Pike County (trial court) that dismissed as moot his petition to review contested corporate action. The trial court also granted a cross-motion for summary judgment filed by Appellee Tanglwood Lakes Community Association, Inc. (Tanglwood or association). This case concerns the authority of a board of directors of a nonprofit corporation to remove a director for cause and the application of the mootness doctrine. We affirm in part and reverse in part.

Tanglwood is a Pennsylvania nonprofit corporation that is generally governed by the Nonprofit Corporation Law of 1988(Law), 15 Pa.C.S. §§ 5101–6162, by its articles of incorporation and by its bylaws, adopted in 1987.[1] Tanglwood's operations are overseen by a Board of Directors (Board) composed of fifteen directors who are elected by the membership to staggered three-year terms. Tanglwood's members first elected Lutz to the Board in 1992 and have re-elected him every year since that time. In 1993 the Board appointed Lutz as Tanglwood's treasurer, and he served in that position until his resignation in May 2003.

At a special meeting on July 17, 2003, the Board voted 10–0, with 4 abstentions, to remove Lutz as a director. The minutes record that the purpose of the special meeting was to review a financial audit undertaken in April 2003 to investigate irregularities in record-keeping and in the dispensation of compensatory time to Tanglwood employees. The minutes also summarized a presentation by the Board's Legal Committee, relating that compensatory time had been dispensed in an illegal manner; that certain employees were allowed to use compensatory time as payment of their association dues and other assessments; that these practices were instituted without informing the auditors; and that documents requested during previous investigations relating to Tanglwood's financial activities were either unavailable, missing or destroyed. The Legal Committee concluded that Lutz and certain employees were responsible. The Board thereafter

---

1. As described in the bylaws, the membership of Tanglwood is composed of the record owners of lots located in the planned community known as Tanglwood Lakes. Tanglwood regulates and inspects the properties to ensure adherence to the community's rules and regulations. Article VII of the bylaws states that the powers of the association are invested in the Board of Directors (Board), whose fifteen members are elected by the general membership at an annual meeting to serve three-year, staggered terms of office (one-third elected each year). Article VII also provides that the Board has the power to appoint and remove association officers (president, treasurer, secretary, etc.) and to hire and fire association employees. Article VIII provides that members may seek Board membership by submitting a petition or by being nominated by the Board's nomination committee. Article X describes the duties of association officers and states that the positions of president, two vice-presidents and treasurer shall be filled only by Board directors.

approved the motion to remove Lutz and motions to discharge several employees.

On August 15, 2003, Lutz filed a petition to review contested corporate action pursuant to Section 5793(a) of the Law, 15 Pa.C.S. § 5793(a).[2] He alleged that neither Section 5726 of the Law, 15 Pa.C.S. § 5726, relating to the removal of directors, nor Tanglwood's bylaws authorized the Board to remove a director by its vote alone. Lutz requested that the trial court hold a hearing to reinstate him as a director and to remove those directors who had allegedly abused their authority by removing him. Following discovery, Lutz filed a motion for summary judgment on October 28, 2003, on the sole issue of whether the Board had legal authority to remove him; Tanglwood filed a cross-motion for summary judgment on November 3, 2003. By order of January 5, 2004, the trial court dismissed as moot Lutz's petition for review and his motion for summary judgment because Lutz's term as director had expired on December 31, 2003. Accordingly, the remedy of reinstatement was no longer available, and there was no meaningful relief to be ordered.[3]

In spite of dismissing the petition for review, the trial court granted Tanglwood's cross-motion for summary judgment. It held that Section 5726(b) of the

Law conferred legal authority upon the Board to remove Lutz as a director for proper cause. In support, the court cited to the minutes of the July 17, 2003, Board meeting which indicated that "[t]he allegations against [Lutz] are substantial and appear to be a justifiable basis for removal." Trial Court Opinion at 5. Lutz's timely appeal to this Court followed.[4]

Lutz first argues that the trial court erred in finding that his action was moot. It is well settled that a court will dismiss an action as moot unless an actual case or controversy exists at all stages of the judicial or administrative process. *Horsehead Resource Development Co., Inc. v. Pennsylvania Department of Environmental Protection*, 780 A.2d 856 (Pa. Cmwlth.2001). Exceptions have been made to this principle when conduct complained of is capable of repetition yet likely to evade judicial review, when the case involves issues of great public importance or when one party will suffer a detriment in the absence of a court decision. *Id.* We agree with Lutz that the first two exceptions are applicable here.

First and foremost, this case presents issues of great importance to the governance of Pennsylvania nonprofit corporations: Under what circumstances may a board of directors remove one of its members for proper cause? Must the bylaws

2. It provides that "[u]pon petition of any person whose status as, or whose rights or duties as, a ... director ... of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action." 15 Pa.C.S. § 5793(a).

3. The trial court also dismissed as moot Lutz's motion to compel discovery and Tanglwood's cross-motion to strike same.

4. The Commonwealth Court's review of a trial court order granting or denying a motion for summary judgment is limited to determining

whether the trial court abused its discretion or committed an error of law. *Fogarty v. Hemlock Farms Community Association, Inc.*, 685 A.2d 241, 242 n. 1 (Pa.Cmwlth.1996). Summary judgment is appropriate only when, after examining the record in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Green Valley Dry Cleaners, Inc. v. Westmoreland County Industrial Development Corp.*, 832 A.2d 1143, 1150 n. 5 (Pa.Cmwlth. 2003), *appeal denied*, 578 Pa. 696, 851 A.2d 143 (2004).

of the organization specify what constitutes "proper cause?" Such fundamental issues of nonprofit corporate governance are likely to reoccur. Second, given the typically short term of a directorship, in this case three years, a director removed at mid-term or later, or a director elected to less than a three-year term, would likely see his term expire before final resolution of any legal challenge to his removal.[5] Because the issue raised by Lutz is one of great public importance, which is capable of repetition yet likely to evade judicial review, we shall determine the propriety of his removal by the Board.

■ This case turns on the meaning of Section 5726 of the Law, 15 Pa.C.S. § 5726, which sets forth specific procedures for removal of directors. Pertinent to the case is subsection (b), which provides as follows:

**(b) By the board.**—Unless otherwise provided in a bylaw adopted by the members, *the board of directors may declare vacant the office of a director if he is declared of unsound mind by an order of court or is convicted of a felony, or for any other proper cause which the bylaws may ·specify,* or if, within 60 days, or such other time as the bylaws may specify, after notice of his selection, he does not accept such office either in writing or by attending a meeting of the board of directors, and fulfill such other requirements ... as the bylaws may specify.

15 Pa.C.S. § 5726(b) (emphasis added).[6]

■ There is no dispute that the first two grounds for removal by the Board are inapposite here; Lutz was neither declared of unsound mind nor convicted of a felony. The parties also agree that Tanglwood's bylaws are silent on the subject of removing a director.[7] Tanglwood justifies the Board's decision on the third ground enumerated in Section 5726(b), arguing

5. *Cf. Saucon Valley School District v. Robert O.,* 785 A.2d 1069, 1073–1074 (Pa.Cmwlth. 2001) ("Given the relatively accelerated pace that gifted students may advance through school and the time which lapses between a due process hearing, hearing officer's decision, Panel decision and this Court's consideration, the District has raised issues that are capable of repetition yet may escape appellate review because the procedural pace of review has been exceeded by a student's educational progress."). Likewise, the issues raised by the parties in this case may escape appellate review because the procedural pace of review of a removal challenge will often be exceeded by the short tenure of a director. *See also Colonial Gardens Nursing Home, Inc. v. Bachman,* 473 Pa. 56, 373 A.2d 748 (1977) (court may decide cases with substantial questions, otherwise moot, which are capable of repetition unless settled); *In re Appeal of JAD,* 782 A.2d 1069 (Pa.Cmwlth.2001) (review of school disciplinary action allowed even when student's graduation rendered suspension moot because issue was one affecting school district's future ability to regulate conduct of students).

6. Subsections (a) and (c) provide for removal of directors by the members or by a court upon petition of any member or director. 15 Pa.C.S. § 5726(a) and (c). Neither of these provisions is applicable in the present case.

7. We disagree with the trial court's determination that the Board has an implied right under Tanglwood's bylaws to remove directors. *See* Trial Court Opinion at 4. The bylaws cited by the court pertain to the Board's authority to remove officers for cause and members for violation of the association's rules or bylaws. Tanglwood Lakes Community Association, Inc., By–Laws, Article VII, §§ 1(e), (h); Reproduced Record at 20a–21a (R.R. ——). Article I, Section 5 and Article 10 of the bylaws clearly contemplate that "members" and "officers" are distinct from "directors." R.R. 16a, 24a. The trial court's erroneous interpretation aside, we agree with the trial court's conclusion that the Board is empowered to remove directors for proper cause. That authority is derived solely from Section 5726(b) of the Law, however, as explained more fully in the text.

that a board of directors may remove a director "for any other proper cause" regardless of whether or not the bylaws define "proper cause." Lutz counters that an organization's bylaws must specify what constitutes "proper cause" before a board may remove a director on this ground.

It is an axiom of statutory construction that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). It is also well settled that the "object of statutory construction is to ascertain and give effect to the intent of the legislature [and that] courts must construe every statute, if possible, to give effect to all of its provisions so that none are rendered mere surplusage." *White v. Associates in Counseling & Child Guidance, Inc.*, 767 A.2d 638, 642 (Pa.Cmwlth.2001) (citations omitted).

■ Applying these principles, we agree with Tanglwood's interpretation of Section 5726(b). In the phrase "or for any other proper cause which the bylaws may specify," the word "which" is a nondefining, nonrestrictive pronoun. William Strunk, Jr. and E.B. White, *The Elements of Style*

59 (4th ed., 2000). Therefore, the clause "which the bylaws may specify" is not essential to defining "proper cause." The legislature's use of the permissive word "may" rather than the imperative "shall" only lends further support to this interpretation.[8] Thus, construing Section 5726(b) according to rules of grammar and common word usage, we conclude that proper cause, standing alone, is a basis for removal of a director by a board of directors; the bylaws of a nonprofit corporation may, or may not, specify what constitutes proper cause.[9]

In sum, we find that Lutz's action, while technically moot, is reviewable since it raises an issue of public importance that is capable of repetition yet likely to evade review. As a matter of law, we hold that Section 5726(b) of the Nonprofit Corporation Law of 1988, 15 Pa.C.S. § 5726(b), permits a board of directors to remove a director for proper cause irrespective of whether the organization's bylaws specify what constitutes "proper cause." Accordingly, we reverse the trial court's order insofar as it dismissed as moot Lutz's petition for review and motion for summary judgment. We affirm on different grounds the trial court's order granting Tangl-

---

8. We note that the word "may" is synonymous with "shall" only in certain limited contexts that are not applicable here, *i.e.*, when a statute gives power to public officials and individual rights call for the exercise of that power. In such cases, "the exercise of such statutory power by public officials is a 'remedy to those ... who would otherwise be remediless.'" *Belcher v. State Harness Racing Commission*, 728 A.2d 425, 427 n. 9 (Pa. Cmwlth.1999) (quoting *Hotel Casey Co. v. Ross*, 343 Pa. 573, 23 A.2d 737 (1942)).

9. The dissent offers a different reading. We note that the disputed clause in 15 Pa.C.S. § 5726(b) comes into play only in the absence of a bylaw specifically limiting the power of the Board to remove a director. The operative language is as follows:

*Unless otherwise provided in a bylaw adopted by the members,* the board of directors may declare vacant the office of a director ... for any other proper cause which the bylaws may specify.

15 Pa.C.S. § 5726(b) (emphasis added).

Under the construction offered by the dissent, a director may not be removed for "proper cause" unless the bylaws specify the grounds therefor. This construction disregards the introductory phrase in Section 5726(b), and it is not consonant with sound public policy. The legislature's default provision is that a Board may remove a director for cause. The nonprofit corporation still retains the ultimate authority to restrict that power through an appropriate bylaw provision, as provided in the introductory clause.

wood's cross-motion for summary judgment. The trial court's remaining discovery rulings are also affirmed.

### ORDER

AND NOW, this 12th day of January, 2005, the order of the Court of Common Pleas of Pike County dated January 5, 2004, in the above-captioned matter is affirmed in part and reversed in part in accordance with the foregoing opinion.

CONCURRING/DISSENTING
OPINION BY Judge SMITH–RIBNER.

I concur in the majority's analysis and conclusions regarding the application to this case of the exceptions to the mootness doctrine. I respectfully dissent, however, from the majority's conclusion that Section 5726(b) of the Nonprofit Corporation Law of 1988(Law), *as amended,* 15 Pa.C.S. § 5726(b), grants boards of directors the power to remove a director for any "proper cause," regardless of whether the corporation's bylaws specify the cause as a ground for removal. Section 5726 provides for the removal of directors as follows:

(a) **By the members.**—Unless otherwise provided in a bylaw adopted by the members, the entire board of directors, or a class of the board, where the board is classified with respect to the power to select directors, or any individual director, may be removed from office without assigning any cause by the vote of members entitled to cast at least a majority of the votes which all members present would be entitled to cast at any annual or other regular election of the directors or of such class of directors. In case the board or such a class of the board or any one or more directors are so removed, new directors may be elected at the same meeting. If members are entitled to vote cumulatively for the board or a class of the board, no individual director shall be removed unless the entire board or class of the board is removed in case sufficient votes are cast against the resolution for his removal, which, if cumulatively voted at an annual or other regular election of directors, would be sufficient to elect one or more directors to the board or to the class.

(b) **By the board.**—Unless otherwise provided in a bylaw adopted by the members, *the board of directors may declare vacant the office of a director if he is declared of unsound mind by an order of court or is convicted of a felony, or for any other proper cause which the bylaws may specify,* or if, within 60 days, or such other time as the bylaws may specify, after notice of his selection, he does not accept such office either *in* writing or by attending a meeting of the board of directors, and fulfill such other requirements ... as the bylaws may specify. (Emphasis added.)

(c) **By the court.**—The court may, upon petition of any member or director, remove from office any director in case of fraudulent or dishonest acts, or gross abuse of authority or discretion with reference to the corporation, or for any other proper cause, and may bar from office any director so removed for a period prescribed by the court. The corporation shall be made a party to such action.

The majority reads the phrase "for any other proper cause which the bylaws may specify" in Section 5726(b) to mean that a board may remove a director "for any other proper cause" it deems legitimate but that the corporation may or may not choose to list that cause in its bylaws as a ground for removal. The majority correctly notes what is the ideal grammatical practice, *i.e.,* that the word "that" functions as a restrictive (defining) pronoun

and the word "which" functions as a non-restrictive (nondefining) pronoun. However, I believe that the majority's reading of the subject phrase is incorrect.

First, authorities now acknowledge that the words "that" and "which" are often used interchangeably and, more specifically, that the word "which" commonly functions as a restrictive and nonrestrictive relative pronoun. H.W. Fowler provides a more thorough explanation:

> Restrictive *that/which* and non-restrictive *which*. Take two sentences or parts of sentences from Anita Brookner's *A Family Romance* (1993): *with the ball-point pen which my father had bought for me in a curiously shaped department store; This sharpness of gaze gave her an air of vanity, which I dare say was justified*. The first contains a restrictive clause led by *which*. In it *which* could have been replaced by *that* without change of meaning and without giving offence to any rule of syntax. The second contains a non-restrictive use of *which* preceded by a comma. In the first sentence the *which*-clause defines and particularizes; and *that* would have done the same work just as well. In the second example, the *which*-clause provides additional information as a kind of parenthetic aside. In other words it is a non-restrictive clause.
>
> ...'The two kinds of relative clauses, to one of which *that* and to the other of which *which* is appropriate, are the defining and the non-defining; and if writers would agree to regard *that* as the defining relative pronoun, and *which* as the non-defining, there would be much gain both in lucidity and in ease. Some there are who follow this principle now; but it would be idle to pretend that it is the practice either of most or of the best writers.'

The New Fowler's Modern English Usage 774 (R.W. Burchfield ed., 3d ed.1996) (last paragraph quoting H.W. Fowler, 1926).

The phrase here "for any other proper cause which the bylaws may specify" contains a restrictive clause not because of the choice of pronoun but because of the structure and punctuation: nonrestrictive clauses are parenthetic and therefore should be separated by commas. William Strunk, Jr. and E.B. White, The Elements of Style 59 (4th ed.2000), at 4. Fowler provides further guidance:

> [']Non-restrictive relative clauses are usually separated from the noun phrases they modify by parenthetical punctuation (usually commas, but sometimes dashes or brackets). In speech, there may be a pause that serves the same function as the parenthesis.' When these are taken together it emerges that a non-restrictive relative clause can normally be recognized because of its parenthetical punctuation or its spoken equivalent—pauses in the flow of speech.

The New Fowler's Modern English Usage, *supra*, at 672 (quoting S. Greenbaum in The Oxford Companion to the English Language (Tom McArthur ed.1992)). Here, the sentence structure and the lack of parenthetical punctuation in the phrase "for any other proper cause which the bylaws may specify" indicate that the phrase "which the bylaws may specify" is a restrictive clause that identifies the type of "proper cause" for which a director may be removed. Thus inclusion of the clause was intended to limit a board's power to remove a director.

Second, the word "may" has several functions, and in the context of the sentence at issue the word "may" does not denote a *permissive action* that can be taken by a board or the membership at its discretion. Instead, it denotes the *possi-*

*bility* that a particular fact will arise or be true, e.g., that a particular "proper cause" will be listed in a corporation's bylaws. *See* Webster's Collegiate Dictionary 718–719 (10th ed.1997); Black's Law Dictionary 1000 (8th ed.2004).

Third, no reason exists for Section 5726(b) of the Law to announce that a corporation may, *as a permissive action*, specify the proper causes for which a board director may be removed. The corporation already enjoys that power: "The bylaws may contain any provisions for managing the business and regulating the affairs of the corporation not inconsistent with law or the articles." Section 5504(a), *as amended,* 15 Pa.C.S. § 5504(a). If specifying in the bylaws the proper causes for which a board may remove a director is not controlling, then the clause "which the bylaws may specify" has no effect, and that part of Section 5726(b) should have read "or for any other proper cause...." Therefore, inclusion of the clause "which the bylaws may specify" makes sense only if it acts as a limit on a board's power to remove a director.[1]

Fourth, and finally, an interpretation of Section 5726(b) of the Law that allows a board to remove a director by its own vote, and for a reason not set forth in the bylaws, is inconsistent with other provisions of the Nonprofit Corporation Law of 1988 that assign the primary responsibility for the selection and removal of directors to the corporation's membership.[2] Under the majority's interpretation, a board may decide to remove one of its directors, e.g., because of his or her personal associations, sexual preferences or some other cause that the board deems to be proper. That is not the intent of Section 5726(b) of the Law. Consequently, even if one allows that the statutory language at issue is ambiguous, any such ambiguity should be resolved in a manner that restricts rather than expands the power of a board as compared to that of the corporate membership.

Accordingly, I would hold that unless otherwise provided in the bylaws, Section 5726(b) of the Law unequivocally permits a board of directors to remove a director for proper cause only when that cause is one specified in the corporation's bylaws. Otherwise, the board must follow the procedures outlined in Section 5726(a) or (c)

1. *See White v. Associates in Counseling & Child Guidance, Inc.,* 767 A.2d 638, 642 (Pa. Cmwlth.2001) (object of statutory construction is to ascertain and give effect to legislative intent and courts must give effect to all statutory provisions so that none are rendered mere surplusage).

2. Section 5504(a) of the Law grants ultimate authority to the members to alter bylaws:
   The members entitled to vote shall have the power to adopt, amend and repeal the bylaws of a nonprofit corporation. Except as provided in subsection (b), the authority to adopt, amend and repeal bylaws may be expressly vested by the bylaws in the board of directors or other body, subject to the power of the members to change such action.
   Section 5504(b) restricts a board's power to alter certain bylaws:

   [T]he board of directors or other body shall not have the authority to adopt or change a bylaw on any subject that is committed expressly to the members by any of the provisions of this subpart. See: ... Section 5721 (relating to board of directors). Section 5725(b) (relating to selection of directors). Section 5726(a) (relating to removal of directors by the members). Section 5726(b) (relating to removal of directors by the board).
   Section 5725 of the Law, *as amended,* 15 Pa.C.S. § 5725, states that unless otherwise provided by a bylaw approved by the members, directors shall be elected by the members. Notably, only in the case of removal by the members may a director be "removed from office without assigning any cause." 15 Pa.C.S. § 5726(a).

when it seeks to remove a director, i.e., by a vote of the members or by the court upon proper petition.