Al Hamilton Contracting Company, Petitioner *v.*
Commonwealth of Pennsylvania, Department of
Environmental Resources, Respondent.

Argued March 12, 1985, before Judges CRAIG and
DOYLE and Senior Judge KALISH, sitting as a panel of
three.

*William C. Kriner, Kriner and Koerber,* for petitioner.

*Timothy J. Bergere,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, June 20, 1985:

This is an appeal by the Al Hamilton Contracting Company (Hamilton) from an order of the Environmental Hearing Board (EHB) dismissing Hamilton's appeal of an abatement order as moot. On September 3, 1983 a Department of Environmental Resources (DER) inspector conducted an inspection of Hamilton's operation. During his inspection, the inspector noticed that an underdrain constructed by Hamilton was plugged with silt and other debris. In his written report the inspector included an instruction that Hamilton clean the underdrain. On September 19, 1983 two supervisory inspectors conducted a partial examination of Hamilton's operation; they noted that a catch basin and diversion ditch needed cleaning and further noted that the underdrain, which had been examined on September 3, 1983, was still plugged. Consequently, on September 19, 1983 the two supervisors ordered Hamilton to clean up the diversion ditch, catch basin and underdrain by September 30, 1983. This September 19, 1983 order apparently was not formalized until it appeared as an abatement order dated September 29, 1983 and issued pursuant to Section 4.3 of the Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S.

§1396.4c (Act).[1] The compliance date was, however, extended at Hamilton's request to October 15, 1983. An inspection on October 20, 1983 revealed that Hamilton had fully complied with the September 19, 1983 directive and the September 29, 1983 abatement order.

On October 28, 1983 Hamilton filed an appeal from the September 29, 1983 abatement order with the EHB alleging, *inter alia,* that the abatement order was devoid of any factual basis, that it was arbitrary and capricious, that compliance by September 30, 1983 had been physically impossible because the order had not been received until October 4, 1983, and that the order violated constitutional and statutory rights because no hearing had been afforded to Hamilton prior to the administrative order. At no time did Hamilton seek a stay of the September 29, 1983 order. By order dated February 23, 1984 the EHB concluded that the September 29, 1983 order had been fully complied with and, thus, that there was no relief which the EHB could grant. Accordingly, it dismissed the appeal as moot. Hamilton has appealed that dismissal to this Court.

Where there is no fact finding below, our scope of review is, of necessity, limited to determining whether there has been a constitutional violation or an error of law. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. In determining whether a case is moot, the appropriate inquiry is whether the litigant has been deprived of the necessary stake in the outcome, *In Re Gross,* 476 Pa. 203, 382 A.2d 116 (1978), or whether the court (or agency) will be able to grant effective relief. *Commonwealth v. One 1978*

---

[1] The Act of May 31, 1945, P.L. 1198 was formerly titled, pursuant to Section 2, the "Bituminous Coal Open Pit Mining Conservation Act." A subsequent amendment resulted in the Act being retitled the "Surface Mining Conservation and Reclamation Act." 52 P.S. §1396.2.

*Lincoln Mark V*, 52 Pa. Commonwealth Ct. 353, 415 A.2d 1000 (1980).

In attempting to demonstrate the necessary stake, Hamilton first maintains that by complying with the DER abatement order it expended time and money and is now deprived of the opportunity to challenge whether it was, in fact, guilty of the named violations. It argues that denial of a hearing constituted deprivation of property without due process. Hamilton has already complied with the abatement order; certainly the EHB would not issue an order after a hearing directing them to again plug the catch basin, diversion ditch and underdrain. While sums of money may have been expended, the clean up is now complete. Had Hamilton seriously questioned the propriety of the abatement order it could have requested a stay pursuant to DER regulation 21.76, 25 Pa. Code §21.76. This it failed to do. Thus, it took the clean-up action at its own risk that such action would not, in fact, be found to be legally required. The fact that Hamilton was deprived of property without a hearing because of its compliance with the abatement order does not justify ignoring the fact that the appeal is moot with respect to the injury of expenditure of time and money to achieve compliance with the abatement order. To the contrary, where a case is moot and a constitutional issue is raised the courts are *most reluctant* to consider the constitutional claim. *In Re Gross*, 476 Pa. at 210, 382 A.2d at 120.

Hamilton next maintains that a civil penalty has been assessed against it pursuant to Section 18.4 of the Act,[2] 52 P.S. §1396.22. DER has pointed out, however, that this civil penalty is a separate agency action. Section 18.4 provides in pertinent part, "[i]n addition to proceeding under any other remedy available

---

[2] Added by Section 13 of the Act of October 10, 1980, P.L. 835.

at law or in equity for a violation of a provision of this act, rule, regulation, order of the department, or a condition of any permit issued pursuant to this act, the department may assess a civil penalty upon a person or municipality for such violation." In addition, Section 18.4 permits the alleged violator "to contest either the amount of the penalty or the fact of the violation." Thus, Hamilton has a separate remedy for this civil penalty and, accordingly, has no stake in the litigation of the abatement order with respect to the civil penalty assessed against it.

Finally, Hamilton maintains that in assessing future civil penalties one factor which is considered by DER is prior violations and that by precluding Hamilton from litigating the propriety of the abatement order the result is to subject Hamilton to the penalty escalation provision in DER regulation 86.194, 25 Pa. Code §86.194. That regulation provides:

**System for assessment of penalties.**

. . .

(b) Civil penalties shall be assessed as follows:

. . .

(6) *History of previous violations.* In determining a penalty for any violation, the Department will consider previous violations of the applicable laws for which the same person or municipality has been found to have been responsible in any prior adjudicated proceeding, agreement, consent order, or decree which became final within the previous two-year period. The penalty otherwise assessable for each violation shall be increased by a factor of 5.0% for each previous violation. The total increase in assessment based on history of previous violation shall not exceed $1,000.

. . .

> (ii) Each previous violation shall be counted without regard to whether it led to' a civil penalty assessment.

This regulation thus requires consideration of prior violations in assessing future civil penalties.[3] At oral argument DER maintained that should the prior violation be utilized in such a manner against Hamilton, DER would *then* be required to prove the existence of the September 1983 violation. While DER did not explain how it would do so, in all likelihood it would introduce the abatement order and attest to Hamilton's compliance with that order. Thus, Hamilton's timely action would be used against it. Hamilton would then be forced to rebut this evidence and clearly it would be at a disadvantage to prove the negative (a nonviolation) that may have occurred a full two years earlier. This result is absurd and unfair. The matter should be litigated now while the witnesses are fresh and the data available. Delay serves no purpose.

This Court realizes that had Hamilton obtained a stay, and that is not necessarily a tenable assumption, the instant problem would not have arisen. We note in particular that the DER regulations contain no indication that requesting or obtaining a stay is a mandatory step to preserve appeal rights. 25 Pa. Code §21.76 provides, "[a] petition for supersedeas . . . *may* be filed at any time during the proceeding." (Emphasis added.) Moreover, a civil penalty can be reduced by swift compliance with a DER order pursuant to 25 Pa.

---

[3] We need not decide whether the abatement order is an adjudication, agreement, consent order or decree as those terms are used in the regulation, since, at oral argument, counsel for DER acknowledged that the alleged September, 1983 violation could be considered in applying the penalty escalation provision.

Code §86.194(b)(3), and thus Hamilton may well have had legitimate reasons for prompt compliance.

DER vigorously asserts that this case is identical to *Highway Auto Service v. Department of Environmental Resources,* 64 Pa. Commonwealth Ct. 160, 439 A.2d 238 (1982). In *Highway Auto* DER issued an order requiring Highway Auto to cease doing business until a satisfactory permanent waste disposal system was installed. During a supersedeas proceeding the parties agreed to a stipulation which permitted Highway Auto to reopen if certain conditions were met. Highway Auto complied with the agreement and reopened. When the case reached the EHB on the merits the EHB dismissed the appeal finding that since Highway Auto had reopened and since it had alleged no breach of the stipulation agreement and no threat by DER to again close its business the case was moot. Significantly, in *Highway Auto* the question of whether the settlement agreement could be used against Highway Auto in the future for assessment of civil penalties was never raised. Thus, the issue of whether the penalty escalation provision would defeat a claim of mootness was not before the Court. In the instant case Hamilton *has shown* that the penalty escalation provision constitutes a stake in the outcome which does overcome the EHB's position that the appeal is moot. We therefore remand this case to the EHB and direct them to hold a hearing on whether the abatement order was based upon facts and whether it was arbitrary and capricious. Reversed and remanded.

ORDER

Now, June 20, 1985, the order of the Environmental Hearing Board, Department of Environmental Resources, No. 83-248-G, dated February 23, 1984 which dismissed Petitioner's appeal as moot is hereby va-

cated and reversed and this case is remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Senior Judge KALISH concurs in the result only.